I N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ANTHONY G. CHRISTOU,

                      **Defendant.**

1:06-cr-483-WSD

## OPINION AND ORDER

This matter is before the Court on Defendant Anthony G. Christou's ("Defendant") Motion in Limine [43] to exclude a recorded conversation from introduction at trial. Defendant initially filed his motion on August 27, 2007, and the Government filed its Response to Defendant's Motion in Limine [44] on September 12, 2007.

The Court held a pretrial conference in this matter on February 11, 2008 and a subsequent hearing on February 19, 2008. The Court heard arguments on each of the four grounds Defendant argued that the conversation should be excluded, and the parties were provided an opportunity to further brief the issues, particularly whether the conversation was protected by the attorney-client privilege. The Government filed its supplemental brief on February 18, 2008 ("February 18

Memo") [67]. The Defendant elected not to make a further submission. This Order addresses each of the grounds argued by the Defendant in support of exclusion of the tape, and supplements the Court's findings at the February 11, 2008, pretrial conference.

## I.   BACKGROUND

Defendant was indicted on November 20, 2006, for alleged wire fraud and money laundering. The indictment is based on a $32 million fraudulent "Ponzi" or pyramid scheme which the Defendant allegedly conducted from about January 2001 through about October 2006. Specifically, Defendant is charged with having devised a fraudulent scheme to obtain money and property from investors. Defendant is alleged to have fraudulently misrepresented to investors that their funds would be used to underwrite short term, high interest rate "bridge loans", secured by real property of the persons to whom Defendant claimed the bridge loans would be made. The indictment alleges that there were in fact no bridge loans, and that Defendant wrongfully used victims' investments to pay principal and interest to earlier investors and otherwise to fund his personal gambling activities.

Among the evidence the Government seeks to present is the tape of a January 29, 2006 conversation between the Defendant, an individual named Lee Katz ("Katz"), and a third-party named Sotirius "Sam" Karras ("Karras"). Mr. Karras recorded the conversation.[1] During the conversation, Defendant allegedly acknowledges that he borrowed money from individuals to pay off earlier debts. In describing his conduct, Defendant stated in the conversation that he "borrow[ed] from Peter to pay Paul." Transcript of January 29, 2006 Conversation ("Transcript") at 9.

As the meeting began, Mr. Katz stated to the Defendant and Mr. Karras that he had been told by a person by the name of Jerry Simms [phonetic] that "we had a situation that you owed a lot of money to people, couldn't pay it back, and there were some issues that may have some issues with the law, and that did I know anyone that could help." Transcript at 3. Mr. Katz stated further "so that's where I came up with the guy Brickman, who I've known, who used to be assistant D.A." Id. Mr. Katz then described his business:

> But what I do for a living, you can check my web site, is I

---

[1] The Government was not involved in Mr. Karras' decision to tape the conversation nor was the Government aware of the conversation until the tape of it was provided to the Government by Mr. Karras.

-3-

> play Let's Make a Deal.  I've taken over big companies
> and run them, and structured them.  I've sold off businesses
> and then I've worked with wealthy individuals to try to
> play Let's Make a Deal when they get, you know, into
> too much trouble.  Especially with ex-wives and things like
> that.

Id.  Mr. Katz generally describes his work as "forensic, accounting and stuff like that."  Id.  His company, Grisanti, Galef & Goldress, describes its services:

> GGG's consulting practice focuses on improving operating
> performance and enhancing shareholder value. From corporate
> revitalizations to complete corporate turnarounds.

http://www.gggmgt.com/.  The website states further:

> We have the ability to apply various financial and
> operational restructuring processes to rescue organizations
> or projects that are in distress. By providing interim
> leadership to companies in crisis situations and advice
> to senior management, GGG has ensured the long-term
> viability of over 500 U.S. and international corporations.

Id.  Neither Mr. Katz nor his company's website state that the firm or Mr. Katz provides legal services.  While Mr. Katz apparently attended a then-unaccredited law school in Atlanta, the directory of active bar members of the State Bar of Georgia does not list Mr. Katz as an active member of the bar.[2]

---

[2] Mr. Katz has advised the Government he did not take the bar examination and was not licensed to practice law in any jurisdiction.  February 18 Memo at 3.

As the conversation progressed, Mr. Karras and Defendant described for Mr. Katz the problems that Defendant had with amounts of moneys he owed to certain individuals, and they inquired about the ability of Mr. Katz to assist Defendant.

The Defendant and Mr. Karras discuss with Mr. Katz, among other things, Mr. Katz's ability to assist Defendant in developing a payment plan to repay the investors/lenders who lost money (including Mr. Karras). Trans. at 5. Mr. Katz responded that "I do this all the time. I'm a receiver, court-appointed receiver. I'm a mediator. I play Let's Make a Deal." Trans. at 14. In addition to potentially offering his services to help structure the repayment plans, set up an escrow account, and negotiate with any resistant lenders, Mr. Katz also offers to put Defendant and Mr. Karras in touch with other individuals who may be able to assist Defendant in legal or tax issues potentially impacting Defendant. Mr. Katz specifically mentioned, "I may want to bring in Mr. [Jeff] Brickman[3], who I mentioned to Jerry, because he needs to be able to advise you of some legal issues" (Trans. at 14) and "If Jeff [Brickman] listens to the story, he can tell us what the legal issues are." Trans. at 31-32. Mr. Katz has confirmed that he intentionally referred to Mr. Brickman as the person who would provide legal advice because he

---

[3] Mr. Brickman is a litigation attorney at a well-known Atlanta law firm.

wanted to make it clear he was not serving as a legal advisor.  Mr. Katz's representations are corroborated by the transcript of the meeting.

Defendant moves to exclude introduction of the conversation on four separate grounds: (1) the conversation is irrelevant under Federal Rules of Evidence Rule 401 ("Rule 401"); (2) the conversation, even if relevant, should be excluded under Federal Rules of Evidence Rule 403 ("Rule 403") on the grounds that its probative value is substantially outweighed by its prejudicial effect, it would lead to confusion of the issues, and that the conversation would mislead the jury; (3) the conversation is protected by the attorney-client privilege; and (4) the conversation contains an offer to compromise and should be excluded under Federal Rules of Evidence Rule 408 ("Rule 408").  The Government opposes Defendant's Motion in Limine on each ground.

## II.     DISCUSSION

### A.     Relevance

Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  F.R.E. 401.  Defendant does not offer any support for his contention that the taped

conversation is not relevant. Review of the transcript demonstrates that the Defendant's statements during the conversation are relevant to the issue of his intent in making various representations to investors, including whether representations he is alleged to have made were or were not false. Throughout the course of the conversation, Defendant makes several allegedly incriminating statements, including that he was "borrowing from Peter to pay Paul." Trans. at 9. Defendant also stated that, "I didn't want to lose face. I didn't want to lose the fact that, hey, I've misappropriated funds and didn't do what I was gonna do–". Trans. at 6.

These statements are directly relevant to the probability of the existence of the scheme. The conversation is relevant and probative under Rule 401.

B.  Probative value and prejudicial effect

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." F.R.E. 403. Defendant simply quotes the language of Rule 403 to support his claim that the conversation should

be excluded. He does not explain how or why the conversation is prejudicial, nor how or why its admission could lead to confusion of the issues or mislead the jury.

Exclusion of relevant evidence under Rule 403 "is an extraordinary remedy that should be used sparingly because it allows the court to exclude admittedly probative evidence." United States v. Ross, 33 F.3d 1507, 1524 (11th Cir. 1994). The Eleventh Circuit has held that "a trial court's discretion to exclude evidence as unduly prejudicial is 'narrowly circumscribe[d]'" and "[t]he 'major function' of Rule 403 is 'limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.'" United States v. Dean, 221 Fed. App'x 849, 852 n. 3 (11th Cir. 2007). In United States v. Elkins, the Eleventh Circuit emphasized that exclusion under Rule 403 is only warranted when admission of evidence rises to the "level of *unfair* prejudice." 885 F.2d 775, 785 (11th Cir. 1989) (emphasis in original).

As is true in any case, any evidence offered against a defendant is prejudicial for the defendant. What Rule 403 excludes is evidence that is unfairly prejudicial – where the prejudice of it outweighs its probative value. Defendant offers no explanation of how admission of the conversation rises to the level of unfair prejudice. Nor does Defendant offer any explanation of how the evidence in this

conversation confuses the issues in this case or misleads the jury. The Court, having reviewed the conversation, finds the conversation highly probative of the alleged existence of a scheme, the allegations of any false or fraudulent representations, statements, or promises, and Defendant's intent in the representations he made to investors. The conversation's probative value is not outweighed by any unfair prejudice, and it is not excludable under Rule 403.

    C.    <u>Attorney-Client Privilege</u>

Defendant next argues that the conversation is inadmissable because it is protected under attorney-client privilege. Defendant does not offer any support for this claim other than to state that one of the participants in the conversation was an attorney named Lee Katz. Motion in Limine ¶ 3. The Court, nonetheless, evaluates whether this communication is privileged and, if it is, whether the privilege was waived when the recording of the conversation was voluntarily given to the Government by Mr. Karras.

The attorney-client privilege protects specific communications between a lawyer and a client. For a communication to be privileged, there must be proof of the following elements:

> (1) the asserted holder of the privilege is or sought to become a client;
> (2) the person to whom the communication was made (a) is [the]

> member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Proceedings 88-9 (MIA), 899 F.2d 1039, 1042 (11th Cir. 1990), citing United States v. Jones, 517 F.2d 666, 670 (5th Cir. 1975). It is well-settled that the burden of proof is on the person seeking to invoke the privilege to show that it applies. See United States v. Kelly, 569 F.2d 928, 938 (5th Cir. 1978), citing C. McCormick Evidence, s 88, p 179 (Cleary ed. 1972). The presence of a third party, when known by the client, can serve to destroy the privilege. "A communication divulged to 'strangers' or outsiders can scarcely be considered confidential communication between attorney and client." United States v. Gordon-Nikkar, 518 F.2d 972, 975 (5th Cir. 1975). The presence of a third party during a communication between a lawyer and a client evidences that the communication was not intended to be confidential nor could it have been reasonably expected to remain confidential. See United States v. Blasco, 702 F.2d 1315, 1329 (11th Cir. 1983).

A review of the January 29 conversation transcript provides conclusive evidence that this was not a privileged conversation.  A review of the transcript indicates that Mr. Katz was not functioning as an attorney and neither the Defendant nor Mr. Karras were seeking legal advice.  We also know that Mr. Katz is not, in fact, a lawyer licensed to practice law and never has been licensed.  No one during the course of the conversation discussed legal issues, sought legal advice, or referred to Mr. Katz as someone who could provide legal counsel.  To the contrary, Mr. Katz specifically stated that he would refer the Defendant to Mr. Brickman "because he [Brickman] needs to be able to advise you of some legal issues" (Trans. at 14) and "If Jeff [Brickman] listens to the story, he can tell us what the legal issues are."  Trans. at 31-32.  Mr. Katz expressly and specifically deferred any legal issues and advice to Mr. Brickman, clearly evidencing the Mr. Katz was not and would not provide legal advice or counsel to either Defendant or Mr. Karras.  To the extent Mr. Katz was offering his services, it was consistent with his firm's business of providing business--not legal--services to companies and individuals with financial problems.  Even if Mr. Katz could be considered an attorney solely for these purposes, it is well-settled that "[a]ttorney-client communications concerning business matters are not within the attorney-client

privilege."  BellSouth Advertising & Publishing Corp. v. American Bus. Lists, Inc., 1992 WL 338392 *8 (N.D.Ga. September 8, 1992).

The Court also concludes that even if these communications had been for legal advice, they were not communicated confidentially.  The Court notes that Mr. Katz mentioned at the start of the conversation that the Defendant's problems had been described to him by a person by the name of Jerry Simms.  While it is not clear how Mr. Simms learned of the Defendant's financial issues, the Defendant did not express surprise that Mr. Katz knew of his predicament or that he learned of it from Mr. Simms.  This indicates that the matter of Defendant's issues were known among various people.  In addition, the evidence offered during the first three days of trial indicate that the Defendant told several people that he owed substantial amounts of money, that he had never made any bridge loans, and that he had used money from later investors to pay interest and other loan obligations to previous investors.  That Mr. Karras was present at the January 29 conversation further indicates that Defendant was not at this time communicating confidentially

about his circumstances and issues.[4]  See Gordon-Nikkar, 518 F.2d at 975; Blasco, 702 F.2d at 1329.

    D.    Offer to Compromise

With respect to a disputed claim, Rule 408 prohibits the use of evidence furnishing or offering or promising to furnish a valuable consideration in compromising or attempting to compromise the claim.  F.R.E. 408(a)(1).

---

[4] To the extent Defendant may contend that he and Mr. Karras believed Mr. Katz was providing legal advice and they were seeking it in confidential communication–a position which Defendant in fact does not argue and for which the Court can find no credible basis–there is no evidence that they were seeking advice jointly.  "[T]he joint client exception presupposes that communications have been 'made in the course of the attorney's joint representation of a "common interest" of the two parties.'  The term 'common interest' typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest . . . .Thus the proponent of the exception must establish cooperation in fact toward the achievement of a common objective."  FDIC v. Ogden Corp., 202 F.3d 454, 461 (1st Cir. 2000) (internal citations omitted).

    Mr. Karras, one of the Defendant's creditors, can hardly be said to have an identical or nearly identical legal interest with the Defendant.  Even if they were seeking legal advice jointly, delivery of the tape of the conversation by Mr. Karras first to the trustee in Defendant's company's bankruptcy and subsequently to the Government was a waiver of any privilege Defendant may now claim.  "[W]here the same attorney acts for two or more parties having a common interest, neither party may exercise the privilege in a subsequent controversy with the other." United States v. Almeida, 341 F.3d 1318, 1324 (11th Cir. 2003) (internal citations omitted).  See also Visual Scene, Inc. v. Pilkington Brothers, PLC, 508 So.2d 437, 440 (Fla. App. 1987) ("Quite obviously, when a member of the common interest group discloses this information to a non-member, a waiver of the privilege, as in the ordinary case, occurs.").

Defendant does not offer any explanation or analysis as to why the conversation should be excluded under Rule 408.

In order for Rule 408 to apply, there must be a "claim that was disputed to validity or amount." F.R.E. 408.  Nowhere in the conversation does Defendant dispute the validity or amounts of money he owes.  The following exchange is revealing:

> TONY: Well, I'm not trying to say those notes aren't good, I'm not gonna pay you.  That's not the purpose.  Then I'm not--
> LEE: You can't pay them.
> TONY: I can't pay them like this.  Now let's make arrangements to repay.

Trans. at 37.  Although the Defendant discusses several payment plans in which either less money can be paid out, or in which he would be given more time to pay off his debt, at no point does Defendant ever dispute those debts, either as to validity or amount.  The repayment or restructuring of the loans is only discussed due to his inability to repay when the notes became due.

The discussions simply do not involve evidence of the furnishing or the offering or promise to furnish valuable consideration to compromise any claim between the Defendant and any individual with a valid claim.  While there is no Eleventh Circuit case on point, a Second Circuit decision is relevant.  In <u>In re B.D.</u>

Intern. Discount Corp., the court held that evidence of a debtor admitting the validity of a claim during compromise negotiations was not inadmissible when the debtor was not disputing the claim but "was simply endeavoring to get more time in which to pay." 701 F.2d 1071, 1074 n. 5 (2d Cir. 1983). That is what is at most present here – an attempt by the debtor to get more time to pay and to explore ways to do that. Rule 408(a)(1) simply does not apply.

### III. CONCLUSION

For the reasons stated above, Defendant's Motion in Limine [43] is **DENIED**.

**SO ORDERED** this 20th day of February, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE