## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **ANTHONY G. CHRISTOU,**<br><br>             **Plaintiff**<br><br>    **v.**<br><br>**UNITED STATES OF AMERICA,**<br>                         **Respondent.** | **CIVIL ACTION NO.**<br>**1:10-CV-2988-WSD-LTW**<br><br>**CRIMINAL ACTION NO.**<br>**1:06-CR-483-WSD-LTW**<br><br>**MOTION TO VACATE** |

## <u>OPINION AND ORDER</u>

Movant, Anthony G. Christou ("Christou" or "Movant"), moves under 28 U.S.C. § 2255 to vacate his sentence.  [140, 143, 149].  On August 11, 2011, Magistrate Judge Walker issued her Report and Recommendation ("R&R") [150] recommending that Christou's § 2255 motion, and a certificate of appealability, be denied.  On September 8, 2011, Movant filed his objections to the R&R, ("Objections") [154], and Respondent filed its response to the Objections [155].

On December 22, 2011, the Court entered its preliminary order addressing Movant's request for an evidentiary hearing on this matter [157].  The Court considered the matters on which Christou argued that an evidentiary hearing was necessary, denying the request for a hearing on the circumstances of the late production of a document authored by Mary Guthrie (the "Guthrie Document")

and the strategy for cross-examination of Guthrie and Karras at trial, on the grounds that a hearing on these issues was not necessary in considering the standard to be applied in the Court's review of the issues raised in Movant's § 2255 motion. The Court granted an evidentiary hearing on the content of a document created by Guthrie, a witness who testified at trial. Because the document had not been produced by the Government before Guthrie testified, because Christou contends the document contained information, which, had it been available, should have been used by Movant's trial counsel to impeach and because Christou contends the Government's late production of the Guthrie Document and its unavailability at trial prejudiced him and entitles him to relief under § 2255, the Court concluded an evidentiary hearing on this issue was in order. The evidentiary hearing was conducted on January 25, 2012. Ms. Guthrie testified at the hearing.

I.     **STANDARD OF REVIEW**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal quotation marks omitted). With respect to those findings and recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record. United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

## II.  BACKGROUND

The indictment in this case charged Movant with four counts of wire fraud in violation of 18 U.S.C. § 1343, and three counts of money laundering in violation of 18 U.S.C. § 1957, arising out of a Ponzi scheme conceived and conducted by Movant. In the scheme, Movant promised to pay high-interest returns on money that victims loaned to Movant for Movant's alleged use in making short-term bridge loans to borrowers purchasing or improving real property. Movant did not make any bridge loans to borrowers and thus did not generate interest income to be distributed to those who gave him money to make the purchase or home improvement loans. Instead, Movant used the funds invested with him to pay

earlier investor-victims and to pay gambling debts at casinos.  Movant was convicted of all counts at trial.

Movant claims in his § 2255 motion that he received ineffective assistance of counsel at trial and at sentencing, and that Respondent violated his right to due process.   Movant claims his trial and sentencing counsel were ineffective by (i) not cross-examining at trial two victim witnesses, Guthrie and Karras, about their claimed false testimony regarding the amount of interest payments they received from Defendant; (ii) not requesting a limiting instruction regarding statements made by Lee Katz, an attorney, who attended a tape-recorded meeting with the Defendant, one of Defendants victims and others; and (iii) failing to challenge the loss amount at sentencing.

Movant's due process claim is based on Respondent's alleged presentation of false testimony at trial from Guthrie and Karras, and Respondent's failure to timely provide Movant or his counsel with a copy of the Guthrie Document.[1]  The

---

[1] While Respondent's case agent apparently had the Guthrie Document before Guthrie testified at trial, Respondent did not produce it to Movant until after he filed his § 2255 motion.  Respondent states the late production was inadvertent.  The reason Respondent failed to produce the document is irrelevant because, as discussed below and in the R&R, Movant has not shown that he was prejudiced by the failure.

R&R thoroughly discussed all of these grounds and the evidence presented at trial.

Movant's Objections are narrowly and principally focused on Guthrie's and Karras's testimony and the Guthrie Document. Specifically, Movant continues to claim his trial counsel was ineffective because of the cross-examination approach he enacted for Guthrie and Karras. Movant claims his trial counsel was ineffective in failing to ask, on cross-examination, about bank records that "showed that Karras had received and negotiated over $145,000 in checks from Christou in repayment for loans (and interest)," and that "Guthrie had received just under $175,000 in checks from Christou in repayment of loans (and interest)." [154 at 3-4]. Movant also claims that Guthrie and Karras were untruthful when they testified that they received small cash interest payments from Movant on the promissory notes Movant gave them in return for their cash investments. Movant contends the Guthrie Document supports Movant's claim that Guthrie received substantial interest payments and that these payments are evidenced in a column in the Guthrie Document titled "Interest Pd." [149 at 3]. Movant argues that Respondent's failure to produce the Guthrie Document, along with its knowing presentation at trial of alleged false testimony by Guthrie and Karras, violated Movant's right to due process. Movant cites trial counsel's failure to confront

Guthrie and Karras on cross-examination about their false testimony regarding the amount of money Movant paid to them as further grounds that his due process rights were violated.[2]

In asserting his ineffective assistance of counsel and due process arguments, Movant ignores the substantial record in this case that shows trial counsel was not ineffective and Movant's due process rights were not violated in large part because trial counsel made effective and informed use of the bank records that were in evidence and were available to the jury to seek to discredit the witnesses' direct testimony on the payment issue. He was not prejudiced by any of the trial shortcomings he argues. The January 25, 2012, evidentiary hearing also provided credible information that the "Interest Pd" column did not contain amounts that were paid to Guthrie as Movant speculated but was a list of interest that Guthrie

---

[2] The Court does not find any error in the R&R's conclusion that Movant procedurally defaulted his claim that Respondent knew Guthrie's and Karras's trial testimony was false. This claim, which as the R&R notes was known to Movant when he appealed, and his failure to raise this issue on appeal results in the procedural default of the claim. [R&R at 16-18]. Movant, whose current counsel has represented him since sentencing, contends that it was inappropriate to accuse Respondent of intentional misconduct on appeal without the benefit of an evidentiary hearing on the issue. The claim was available to Movant when the trial ended and could have been raised on appeal, even if it was not likely to succeed, or at least in a motion for new trial if Movant wanted to develop the record. Id.

and her husband expected to be paid on the notes Movant executed in return for cash he enticed the Guthries to give to him as part of the scheme Movant developed and put into place.

After a careful, *de novo* review of those portions of the R&R to which Movant has asserted Objections, the Court agrees with the findings and conclusions in the R&R. The Court finds no plain error in the remainder of the R&R.[3]

## III.  DISCUSSION

### A.  Ineffective Assistance of Counsel Claim

To prove counsel was ineffective, a § 2255 movant must show that his counsel's performance was deficient meaning that it was below objectively reasonable standards, and that the deficient performance prejudiced the movant. Strickland v. Washington, 466 U.S. 668, 689, 692 (1984). The court is "highly deferential" in scrutinizing counsel's performance. Id. at 689. It "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment."

_____

[3]Movant also does not object to the facts set out in the R&R and having reviewed them and found no plain error, the facts are adopted by the Court.

Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc) (internal quotation marks omitted). Movant must prove that no objectively competent lawyer would have taken the action his lawyer took. Id. at 1315.

A court determines whether counsel's challenged acts or omissions prejudiced the movant, that is, whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. If a movant fails to meet either prong of the Strickland test, he fails to prove his counsel was ineffective. Id. at 687. Here, Movant fails to meet either prong of the test. Indeed, the decisions made by counsel were thoughtful and competent and if his counsel had done everything Movant now claims ought to have been done with victim witnesses Karras and Guthrie, the outcome would have been exactly the same. The evidence of Movant's criminal conduct simply was compelling.

The R&R correctly concludes that Movant has not shown that no reasonably competent lawyer would have challenged Guthrie's and Karras's credibility by relying on banking documents admitted into evidence, rather than confront the witnesses with the documents on cross-examination. Movant also has not shown

he was prejudiced by the conduct he alleges.

Trial counsel's decision on how to challenge Guthrie's and Karras's direct examination testimony regarding the interest payments they received was reasoned and a credible, manageable method for seeking to challenge their direct examination testimony that they received only small payments from Movant on the notes they received in return for the funds they loaned to him.

The Court notes that there was presented, at trial, testimony from an IRS agent regarding Movant's bank records. These bank records showed various payments by Movant to Guthrie and Karras. Guthrie's bank records also were in evidence. All this bank record evidence was discussed with the jury by counsel during closing arguments, and the evidence was given to the jury for use during the jury's deliberations. That this banking evidence was available to the jury is acknowledged by Movant in his objections to the R&R. Movant concedes that "the bank records *clearly* showed the *exact* amount of money that Guthrie received from [Movant]" and that those records were "undeniable, unequivocal, black-and-white documentation" of the payments to Guthrie. [154 at 4, 6] (emphasis added). Movant's trial counsel used this evidence to attack Guthrie's and Karras's direct examination credibility. Use of this other evidence to mount the attack, rather than

risk doing so by cross-examination, is understandable and strategically clever. [4]

Other witnesses also testified about payments Movant made to the holders of the promissory notes he gave them.  Movant's secretary testified during both Respondent's and Movant's cases-in-chief that she personally gave Guthrie cash payments on her promissory notes.  The bankruptcy trustee testified that note-holders were paid, including some who received more in return than they had given Movant.  The jury even heard Movant himself, on an audio recording, describing the payments he made to note-holders during a conversation that he did not know was being recorded.

The accumulation of evidence at trial accurately, and overwhelmingly, described Movant's criminal conduct.  It allowed the jury and the Court to understand Guthrie's testimony and to evaluate its credibility.  Trial counsel effectively used all of the evidence presented to challenge Guthrie's and Karras's direct testimony.  Movant claims that Guthrie and Karras, on direct examination, substantially understated the "interest" payment they received on the funds tendered to Movant.  Trial counsel pointed to evidence introduced at trial in the

_____

[4] Having presided over this memorable trial, the Court has a unique perspective on the evidence presented and the trial strategies employed, discrediting the need for an evidentiary hearing beyond that of the one held.

form of bank records, summaries and witness testimony that Movant's counsel argues discredited the direct examination testimony of these witnesses. This argument obviously was rejected by the jury.

To establish ineffective assistance of counsel, a § 2255 Movant must show that his counsel's performance was deficient such that it was below objectively reasonable standards, and that the deficient performance prejudiced Movant. Strickland, 466 U.S. at 688-92. The Court is required to be "highly differential" in scrutinizing counsel's performance, id. at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Chandler, 218 F.3d at 1314 (internal quotation marks omitted). Deficient performance means that no objectively competent lawyer would have taken the action the lawyer took. Id. at 1315. Here, the Court necessarily concludes that an objectively reasonable lawyer would have made similar, if not precisely the same, evidentiary decisions that trial counsel made here. If Movant's trial counsel had elected to cross-examine Guthrie and Karras on the bank records, their responses may well have diminished the impact of the records and collaterally diminished the testimony of those witnesses who testified about the payments made to Guthrie and

Karras.  Cross-examining a witness on matters for which the witness's response is unknown violates established principles of cross-examination and a decision to avoid the risk of an unanticipated response is professionally responsible.[5]

The Court further concludes that, in light of the overwhelming evidence at trial, Movant's scheme, and the scope of it, Movant did not suffer any prejudice by the decision not to cross-examine Guthrie or Karras on the documents.  See Strickland, 466 U.S. at 692.  The objection based on the failure to cross-examine is overruled.

The Court also concludes that failure to have the Guthrie Document available at trial also did not prejudice Movant.  The Court accepts the Government's admission that this document should have been produced.  The question is what impact its unavailability had on Movant.  Considering the record as a whole, including the testimony of Ms. Guthrie at the January 25, 2012, hearing, the Court concludes that the information in the Guthrie Document did not, as Movant contends, evidence that Guthrie received substantial interest payments

---

[5] This possibility was illustrated by the testimony of Ms. Guthrie at the January 25, 2012, evidentiary hearing.  The explanation of the Guthrie Document significantly undercut Movant's claim that the document showed substantial interest payments to Ms. Guthrie.

from Movant. Ms. Guthrie stated the amounts set out in the Guthrie Document under the heading "Interest Pd" were amounts of interest Guthrie and her husband expected to receive as payment under the notes given to them. She testified further that she only specifically recalled receiving interest in the amount of $17,000, on a loan totaling about $350,000. This "interest" amount was paid in an effort by Movant to avoid Guthrie and her husband suing him.

The evidence in the record is that the Guthrie Document does not show in the "Interest Pd" column moneys actually paid to the Guthries, only what Movant promised to pay. Besides paying small amounts of "interest" to the Guthries just before Movant filed for bankruptcy, Ms. Guthrie further testified that she could not remember Movant paying back any of the principal owed on the notes. The testimony presented at the January 25, 2012, hearing substantially discredited Movant's interpretation of the Guthrie Document.

Movant simply was not prejudiced by the unavailability of the Guthrie Document at trial. The evidence presented at trial substantially supported that Movant initiated and managed a Ponzi scheme. Even if Guthrie and Karras could have been discredited, the testimony presented by the other scheme victims and the evidence of the scope of the scheme, the number of total victims impacted, the

magnitude of the funds paid to Movant by "investing" and the losses suffered, presented compelling evidence that Movant was guilty of developing and operating a multi-million dollar Ponzi scheme.

Movant also has not cited any authority or evidence suggesting that his trial counsel failed to exercise minimal competence by choosing to use the bank account records independently as impeachment evidence rather than to confront Guthrie and Karras with it on cross-examination. The decision not to cross-examine a witness and to seek to impeach using other evidence is a well-established and well-reasoned litigation tactic. The Court does not find that there is a reasonable probability that counsel's decision not to cross-examine Guthrie and Karras on the bank payment records impacted the outcome of the trial given that the evidence was presented to the jury in multiple forms, from multiple witnesses, and at multiple other points during trial.[6]

---

[6] Movant erroneously suggests that the R&R concluded that it was sufficient for Movant's trial counsel to present the testimony of Movant's secretary, alone, to refute Guthrie's and Karras's testimony regarding payments. While Movant's trial counsel did not present the bank records, IRS agent Brooks's testimony regarding payments, Movant's tape-recorded statements regarding payments, or the bankruptcy trustee's testimony regarding payments, the relevant point is that all of that evidence was presented (by Respondent) to the jury. In determining whether counsel was ineffective – which requires a showing of deficient performance and prejudice – courts do not examine what defense counsel did or did not do in a vacuum and ignore evidence

Movant has failed to prove either prong of the <u>Strickland</u> test.  He has not

proved that his trial counsel's performance fell below objectively reasonable

standards and he has not shown that "there is a reasonable probability that, but for

counsel's unprofessional errors [even if there were some] the result of the

proceeding would have been different."  <u>See</u> <u>Strickland</u>, 466 U.S. at 694.  The

substantial scope of Movant's criminal undertaking was shown at trial through

documents and testimony, including Movant's own tape-recorded admission, and

in the aggregate was overwhelming evidence of Movant's scheme, and

conclusively shows that, even if Movant's trial counsel was deficient in not cross-

examining Guthrie and Karras on the bank records, and even if he had the Guthrie

Document, the outcome of the trial would not have been different.  There certainly

is no reasonable probability that it would have undermined confidence in the

verdict returned by the jury.  <u>See</u> <u>id.</u>

     Finally, Movant cites two out-of-circuit cases and an Eleventh Circuit case

to suggest that failure to cross-examine a witness with available impeachment

evidence constitutes *per se* ineffective assistance of counsel.  Movant's reliance on

these cases is at least misplaced.

_____

presented by the government.

In <u>Nixon v. Newsome</u>, 888 F.2d 112 (11th Cir. 1989), a witness, Kathy Billings, observed a fight in a trailer between two men - Nixon and her husband, Tom Billings. Kathy Billings saw a third person, Zolun, fire a .45 caliber handgun from the doorway of the trailer. About the same time, a gun over which Nixon and Billings appeared to be fighting, discharged. Tom Billings fell to the floor mortally wounded by two .32 caliber rounds. Zolun was tried for Tom Billings's murder. Kathy Billings testified at Zolun's trial that Zolun killed her husband and that she never saw Nixon with a weapon. Zolun was acquitted.

Nixon was later tried for Tom Billings's murder. At Nixon's trial, Kathy Billings testified that it was Nixon who killed her husband. On cross-examination, she denied that she had testified at Zolun's trial that Zolun had killed her husband. When this testimony was given, counsel for Nixon did not impeach her with her directly contradictory testimony given at Zolun's trial. She also denied on cross-examination that she had testified at Zolun's trial that she "never saw Nixon with a gun." On these troubling facts, the Eleventh Circuit found that counsel's failure to cross-examine the key eye-witness to a murder by using her starkly inconsistent statements recorded at a previous trial of another person for murder of the witness's husband violated the <u>Strickland</u> standards because counsel acted outside

the "wide range of professional competence." Id. at 115.

Nixon is very different from the case here.  In Nixon, counsel failed to cross-examine the victim's wife at the second trial for her husband's death, using directly contradictory recorded testimony given at the previous trial.  The case here does not have one key eyewitness and there is no recorded prior sworn testimony that directly and unequivocally contradicts the testimony offered at a later and different proceeding.  It is unusually powerful impeachment to confront a witness on cross with prior inconsistent record testimony that directly contradicts a witness's testimony on direct.  The failure to use such powerful impeaching evidence on the only eyewitness to a crime is not competent because it is likely to change a trial result.  Here, Movant claims that trial counsel's decision to use some inconclusive, ambiguous evidence on cross was incompetent.  The quality of the evidence in question in this case is different in type and character from a prior recorded sworn inconsistent statement.  Nixon does not support the arguments that Movant makes in this action.

In Berryman v. Morton, 100 F.3d 1089 (3d Cir. 1996), the court evaluated trial counsel's failure to cross-examine the victim of a rape (and the only eye-witness to defendant's criminal conduct) by using inconsistent prior recorded

testimony, his failure to call two of the witnesses who could cast doubt on the victim's testimony, and his decision to cross-examine the victim and to introduce the testimony of another witness, knowing that cross-examination and testimony would bring to the jury's attention that the movant's co-defendant was under investigation for homicide and bank robbery.  Id. at 1093.  At a hearing held in the state habeas proceeding, the movant's trial counsel testified his decisions were all strategic ones.  Id.  The state habeas court found that trial counsel was not ineffective, and the state appellate court agreed.

The movant filed a petition in federal district court under 28 U.S.C.§ 2254. The district court, applying the test under Strickland and the presumption that arises from it, found that the movant's trial counsel had been ineffective and granted the habeas petition.  On appeal, the Third Circuit affirmed the district court's decision, holding that the "district court's thoughtful and thorough opinion can be interpreted as holding that trial counsel had no trial strategy at all . . . [or could] be read as concluding that counsel did have a strategy, but the state court erred in holding that it was reasonable."  Id. at 1095.  The circuit court found the record did not support that trial counsel had a strategy and the decisions counsel made at trial were inconsistent with trial counsel's theory that the victim was not

telling the truth.  Id. at 1095-96.

Berryman also is a very different case from the one here.  This case did not

deal with one principal victim witness on whose testimony the trial hinged.  Trial

counsel's strategy here was to claim that Movant entered into regular loan

arrangements with a large number of lenders, nine of whom testified at trial and

others whose transactions were evidenced by actual and summarized banking

documents, and an IRS investigator's testimony.  The evidence showed that over

$40 million was borrowed by Movant and that most persons who loaned money

were not repaid.  The strategy here was to impeach the direct examination of, at

most, two of the nine victim witnesses with documents and testimony that was

inconsistent with the direct testimony, but not to cross-examine them on it.  This

was a sound strategy considering there was considerable risk that cross-

examination could produce explanations that the direct testimony was based on

funds already received rather than the various reinvestments Movant claimed he

made for lenders.   Unlike Berryman, Movant's trial counsel here had no prior

testimony or knowledge of what these independent victim witnesses would say to

justify the risk of cross-examining them on the documents Movant claims should

have been used.  Berryman simply does not apply.  Indeed, there was a self-

evident, sound strategy for the choices counsel made at trial.

Moffett v. Kolb, 930 F.2d 1156 (7th Cir. 1991) also concerned a prior recorded statement that was inconsistent with the testimony of the principal witness. Moffett's trial theory was that Antonio grabbed from Moffett the gun used to shoot the victim, Tysen, then shot Tysen. There was no witness to the shooting or to who had the gun in his possession. Brown gave a statement to a police officer after the shooting that Antonio had the gun immediately after the shooting and he heard Antonio say that he shot the gun. This evidence was not introduced at trial and the court, applying the Strickland standard, found that the failure to introduce it amounted to ineffective assistance of counsel because it directly contradicted the circumstantial evidence that Moffett was the shooter.

Moffett also is far different from the case here, where at trial, the variety of evidence of Movant's conduct, the multi-million dollar scope of the fraud, and the direct testimony of seven victim witnesses, combined with financial document evidence and testimony, established Movant's Ponzi scheme offense.

Movant's reliance on these three cases suggests that he contends that failure to cross-examine a witness using available impeachment evidence of any kind is always ineffective assistance of counsel. A more careful reading of Nixon,

Berryman, and Moffett, in the context of the Strickland test, demonstrates that it is the rare case where there is such compelling, unassailable impeachment evidence, such as prior recorded inconsistent sworn testimony of a witness or objective, uninvolved eyewitness testimony that, if not presented, will constitute the kind of trial counsel conduct that will support a finding that a lawyer was ineffective at trial. That rare circumstance simply is not present in this case. Trial counsel made practical and thoughtful decisions on how to use evidence that was available to try to discredit Guthrie's and Karras's testimony. He simply used it in ways other than to directly contradict them with evidence which they might easily explain away and risk potentially bolstering, rather than eroding, the quality of their testimony.

     B.  Brady and Due Process Claims

Movant next objects to the R&R on the grounds that an evidentiary hearing is necessary to determine why the Guthrie Document was not timely provided to Movant's trial counsel and to determine what Guthrie meant when she authored the Guthrie Document. Only with this information, Movant argues, may the Court determine if Movant was prejudiced at trial. The January 25, 2012, hearing provided evidence to show that Movant misunderstood the information on the Guthrie Document and certainly did not offer any basis to show the document

evidenced interest money actually received. The hearing evidence was that the Guthrie Document does not support Movant's argument that Guthrie and her husband received substantial interest payments.

The Court further concludes that when Christou appealed his conviction he had sufficient trial and sentencing evidence to assert, on appeal, his due process claim based on Guthrie's and Karras's purportedly false trial testimony. This claim was not appealed and Movant's current argument that this claim can avoid procedural default based on the late production of the Guthrie Document is not well-founded. See McLeskey v. Zant, 499 U.S. 467, 497 (1991). Movant procedurally defaulted on this claim for the same reason – on appeal, he failed to assert that Guthrie and Karras gave allegedly perjured testimony at trial. This claim was known to Movant when he appealed, but he did not offer it as a grounds upon which his appeal was based.

The Court finds further that even if these claims were not procedurally defaulted, the claims fail on their merits. The government's failure to produce impeaching or exculpatory evidence in its possession to a defendant constitutes a violation of a defendant's due process rights if: (i) the government suppressed the evidence either willfully or inadvertently; and (ii) prejudice ensued, i.e., the

evidence was material.  <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004).  Favorable

evidence is material if it "could reasonably be taken to put the whole case in such a

different light as to undermine confidence in the verdict."  <u>Id.</u> at 698 (internal

quotation marks omitted).  A defendant "must show a reasonable probability of a

different result."  <u>Id.</u> at 699 (internal quotation marks omitted).

A different result was not probable in this case including because Movant

introduced and argued evidence he concluded showed that Guthrie and Karras had

substantially understated the interest they received on the notes Movant gave to

them.  Moreover, Guthrie and Karras were only two of the nine victims who

testified.  The evidence presented at trial compels the conclusion that there was no

probability of a different outcome in this case if the Guthrie Document had been

timely produced or had Guthrie and Karras been confronted with the document.

Other evidence at the trial allowed Movant to make his case that Guthrie's and

Karras's direct testimony was not believable.

The record conclusively refutes Movant's arguments that he was prejudiced

in some unspecific way by not having the Guthrie Document at trial and by his

lawyer's decision not to confront Guthrie and Karras with the bank records during

cross-examination of them.  An evidentiary hearing is not required to determine

whether Movant was prejudiced.  The evidentiary hearing that was conducted on January 25, 2012, showed that Movant was not prejudiced with respect to the content of the Guthrie Document.

## IV.    CONCLUSION

For the foregoing reasons, and having reviewed *de novo* those findings and recommendations in the R&R to which Christou asserted an objection, and having reviewed for plain error the remaining findings and recommendations in the R&R to which an objection was not asserted,

**IT IS HEREBY ORDERED** that the Court **OVERRULES** Movant's objections [154].

**IT IS FURTHER ORDERED** that the Court **ADOPTS** the findings and recommendations in the R&R [150].

**IT IS FURTHER ORDERED** that Movant's § 2255 motion to vacate his sentence [140] is **DENIED,** and Movant is **DENIED** a certificate of appealability.

**SO ORDERED** this 30th day of January, 2012.

_William S. Duffey_
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE